UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

UNITED STATES OF AMERICA,

    --against--

                                                      15 CR 171(ALC)

EDWARD DURANTE

                Defendant.

-----------------------------------------------------X

**SENTENCING SUBMISSION ON BEHALF OF DEFENDANT EDWARD DURANTE**

                                                        Lee A. Ginsberg
                                                        *Attorney for Defendant*
                                                        Freeman, Nooter & Ginsberg
                                                        75 Maiden Lane, Suite 503
                                                        New York, New York 10038
                                                        (212) 608-0808

1

# INTRODUCTION

This memorandum is submitted to assist the court in sentencing Edward Durante whose sentence is currently set for July 7, 2017. The comments below seek to provide the court with the information necessary to determine a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment. See 18 U.S.S.C. Sec. 3553 (a); Gall v. United States, 552 U.S. 38 (2007).

As argued infra, under the facts and circumstances of this case and mindful of the Mr. Durante's prior record, we respectfully request that a sentence of no more than 140 months' incarceration be imposed

# BACKGROUND

Mr. Durante has pled guilty to various crimes, including perjury, all of which are adequately set out in the PSR and plea agreement.    Because of the number of crimes and the nature of some of them, a grouping analysis was conducted by the Probation Department. Based upon that analysis, Mr. Durante's offense level is 38 and his Criminal History Category is III. That leads to a guideline range of 292 to 365 months (approximately 24 to 30 years in prison). Mr. Durante is currently 64 years old.

# ARGUMENT

1. **Current Fraud Guidelines**

Utilizing the current Sentencing Guidelines for economic offenses can often result in a sentence that is disparate and patently unfair.   This is so because of the Guidelines'

2

over-emphasis on loss amounts and "doubling-up" on additional point enhancements for offense characteristics. As such, the fraud Guidelines have faced criticism by courts in this district and beyond. As Judge Rakoff stated in United States v. Adelson, 441 F. Supp.2d 506 (S.D.N.Y. 2006):

> To put this matter in broad perspective, it is obvious that sentencing is the most sensitive, and difficult, task that any judge is called upon to undertake. Where the Sentencing Guidelines provide reasonable guidance, they are of considerable help to any judge in fashioning a sentence that is fair, just and reasonable. But where, as here, the calculations under the guidelines have run so amok that they are patently absurd on their face, **a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a)**, as carefully applied to the particular circumstances of the case and of the human being who will bear the consequences.

Id. at 515 (emphasis added). In Adelson, Judge Rakoff imposed a sentence of 42 months after calculating an advisory Guideline range of life imprisonment. Id. at 509, 514. See also, United States v. Gupta, 904 F. Supp. 2d 349 ("This Court has already had occasion to comment on the unreasonableness of this approach in United States v. Adelson, 441 F. Supp.2d 506, (S.D.N.Y. 2006), and hereby adopts by reference the observations made there."). In Gupta, Judge Rakoff imposed a sentence of 24 months after calculating an advisory Guideline range of 78 to 97 months' imprisonment. Id. at 353, 355.

In United States v. Parris, 573 F. Supp. 2d 744 (E.D.N.Y. 2008), Judge Block, after conducting an in-depth analysis of sentences in securities fraud cases nationwide, noted his disagreement with the advisory guidelines:

> While I acknowledge that the Guidelines 'reflect Congress' judgment as to the appropriate national policy for such crimes,' id., this does not mean that the Sentencing Guidelines for white-collar crimes should be a black stain on common sense. Fortunately, thanks to the Supreme Court, district courts are now 'allowed to impose a sentence that varies from the Guidelines based solely on… disagreements with the Guidelines,' as long as they "state the basis for [their] disagreement along with 'sufficient justifications' for 'the extent of any departure.'" Cutler, 520 F.3d at 163 (quoting Gall, 128 S. Ct. at 594).

3

Id. at 754-755.  In Parris, Judge Block imposed "a term of incarceration of 60 months in the face of an advisory guidelines range of 360 to life."   Id. at 745.

> While one might theorize as to why the Sentencing Commission promulgated each of these additions, 'the [Sentencing] Commission has never explained the rationale underlying *any* of its identified specific offense characteristics, why it has elected to identify certain characteristics and not others, or the weights it has chosen to assign to each identified characteristic.'   Stith & Carbanes, supra, at 69.   Here, their combined effect—an added 20 points under the Government's approach—ill-fits the situation of someone like Adelson.   It represents, instead, the kind of 'piling-on' of points for which the guidelines have frequently been criticized.

Adelson at 510 (emphasis added).   This "piling-on" of points repeatedly punishes defendants for aspects of the case effectively incorporated into the loss enhancement but then broken out and added on in other ways.

In this matter, a sentence resting on the Guidelines calculation would be "greater than necessary" given the fact that Mr. Durante is a sixty-four year old man who has endeavored to provide information to the Government and has additional mitigation arguments under 18 U.S.C. §3553.   These factors along with the problematic nature of the sentencing scheme for fraud cases weigh heavily in favor of a sentence substantially below the advisory Guideline.   In fact, data for federal sentences for fraud crimes in 2015, indicates that 36.5 percent of the sentences imposed for fraud were below the Guidelines range in the Second Circuit and 27.5 percent of the sentences imposed for fraud were below the Guidelines range nationwide.   United States Sentencing Commission, Interactive Sourcebook of Federal Sentencing Statistics, "Sentences Relative to the Guideline Range Over Time (6 Categories)," *available at* http://isb.ussc.gov/Login (*last visited* June 26, 2017).

**2.     Amendments to the Fraud Guidelines**

Faced with growing criticism of the economic offense Guidelines, on January 9, 2015, the United States Sentencing Commission promulgated a series of proposed amendments to the "basic economic offenses" section of the Federal Sentencing Guidelines Manual. On April 9, 2015, the Sentencing Commission voted to adopt these changes to the fraud guidelines. These changes went into effect on November 1, 2015.

The chair of the Sentencing Commission, Chief Judge Patti B. Saris, stated that the Commission found that "…there were some problem areas, particularly at the high-end of the loss table" and that the current amendments "recognize concerns regarding double-counting and over-emphasis on loss." Id.

However, the reforms approved by the Sentencing Commission have a limited effect on lessening the disparity caused by sentencing under the prior fraud Guidelines. The major reforms that became effective on November 1, 2015 centered on adjusting the loss and fine tables for inflation, incorporating a specific intent requirement into the sophisticated means enhancement and modifying the number of victims enhancement to "specifically incorporate substantial financial hardship to victims as a factor in sentencing economic crime offenders." United States Sentencing Commission, Amendments to the Sentencing Guidelines, pg. 28, *available at* http://www.ussc.gov/sites/default/files/ pdf/amendment-process/official-text-amendments/20150430_Amendments.pdf.

Although these reforms are a step in the right direction, they do not provide meaningful reform to sentences imposed using the advisory Guidelines and they do not alleviate the concerns voiced by Judges Rakoff and Block and by the American Bar Association ("ABA").

5

In "A Report on Behalf of the American Bar Association Criminal Justice Section Task Force on the Reform of Federal Sentencing for Economic Crimes, November 10, 2014,"[1] the ABA recommended that the following replace §2B1.1(a) and (b):

**<u>Economic Offenses</u>**

(a) Base Offense Level: [6-8]

(b) Specific Offense Characteristics

    (1) Loss.   If the loss exceeded $20,000, increase the offense level as follows:
        (A)  More than $20,000 More  add [4]
        (B)  than $100,000  add [6]
        (C)  More than $1,000,000  add [8]
        (D)  More than $5,000,000  add [10]
        (E)  More than $10,000,000  add [12]
        (F)  More than $50,000,000  add [14]

    (2) Culpability
        (A)  Lowest culpability Low  subtract [6-10]
        (B)  culpability  subtract [3-5]
        (C)  Moderate culpability  no change
        (D)  High Culpability  add [3-5]
        (E)  Highest Culpability  add [6-10]

    (3) Victim Impact
        (A)  Minimal or none Low  no increase
        (B)  add [2]
        (C)  Moderate  add [4]
        (D)  High  add [6]

(c) Special Offense Considerations

For offenses of a kind specified in Section 2B1.1(b)(3) through (9), (11) through (14), or (16) through (18), the court should consider those offense characteristics to the extent they are appropriate in determining culpability or victim impact.   Where the offense presents a special concern of the kind intended to be addressed by these subsections, and where the concern has not been addressed in determining the offense level, increase by 2 offense levels. [incorporate specific Congressional directives].

---

[1] *Available at* https://www.americanbar.org/content/dam/aba/publications/criminaljustice/economic_ crimes.authcheckdam.pdf (*last visited* June 26, 2017) (brackets in original).

As stated above, the major change in the November 1, 2015 amendments modified §2B1.1 (b)(1) as follows:

If the loss exceeded $6,500, increase the offense level as follows:

    (A)  $6,500 or less More than  no increase
    (B)  $6,500  add 2
    (C)  More than $15,000  add 4
    (D)  More than $40,000  add 6
    (E)  More than $95,000  add 8
    (F)  More than $150,000  add 10
    (G)  More than $250,000  add 12
    (H)  More than $550,000  add 14
    (I)  More than $1,500,000  add 16
    (J)  More than $3,500,000  add 18
    (K)  More than $9,500,000  add 20
    (L)  More than $25,000,000  add 22
    (M)  More than $65,000,000  add 24
    (N)  More than $150,000,000  add 26
    (O)  More than $250,000,000  add 28
    (P)  More than $550,000,000  add 30

When one compares the ABA recommendation to the amendments approved by the Sentencing Commission, it is clear that meaningful reform has a long way to go. The ABA's recommendation features a reduction in loss-based points and a shift towards determining culpability and victim impact rather than adding several specific offense characteristics and other adjustments that often "pile-on" points in a fraud case and lead to disparate advisory Guidelines ranges. As such, the current fraud Guidelines continue to be an unreliable starting point for sentencing and one that is designed to lead to disparate sentences.

As recommended by Judges Rakoff and Block in <u>U.S. v. Adelson</u>, <u>U.S. v. Gupta</u> and <u>U.S. v. Parris</u>, the factors enunciated in 18 U.S.C. § 3553 provide a more reliable criterion for establishing an appropriate "sufficient, but not greater than necessary" sentence.

### 3. 18 U.S.C. § 3553 Factors

As is clear from the foregoing, the application of the 18 U.S.C. §3553 factors are of utmost importance in determining the appropriate sentence in this case. Striking a balance between the advisory Guidelines range of 292 to 365 months and the §3553 factors is the best way to ensure that a sentence that is "sufficient, but not greater than necessary" is imposed in this matter.

Clearly, counsel and Mr. Durante are aware of his prior conviction for fraud, his failure to follow through on an opportunity to cooperate, by engaging in illegal conduct and the fact that there is a perjury charge in this case.   Each one of those factors weighs against Mr. Durante in determining the deterrence factor of the factors to be considered in imposing a sentence.   See, 18 U.S.C. §3553(a)(2)(B) and (C).   As to general deterrence, a sentence of 140 months would certainly be high enough to send a message to others regarding the punishment that awaits them if they commit fraud and are arrested.

We believe that as to specific deterrence there are other considerations. While it is logical to assume that, since Mr. Durante received a 10-year sentence on his first conviction and he has committed another fraud, he was not deterred from committing further criminal activity as a result of his first conviction, that does not mean that a sentence in or near the Guidelines range calculation in this matter needs to be imposed on Mr. Durante.   For one, as mentioned supra, he is now 64 years old. Therefore, the Guidelines range calculation essentially puts him into a mortality category where he is more likely to die in jail then ever be released, even if a sentence at the low end was imposed.   So in some very real sense, the question may be asked as to whether, even given his prior and current criminal behavior, he deserves such a fate?   While acknowledging that individuals have been harmed as a result of his conduct, how punitive must a

8

sentence be? The sentence recommended in this memorandum would still leave Mr. Durante incarcerated well into his seventies.

During the course of his lifetime, Edward Durante has held real and legitimate employment, which he used as the basis to support his family. Therefore, he has been able to maintain a good relationship with his family for a long period of time. He has two grown children who seem to be successful in their lives and he has one young child from his current relationship.

In addition, during the pendency of this case, Mr. Durante offered to cooperate with the Government. The Government made it very clear in meetings and at the plea allocution that while they may agree to meet with him they would not offer him a cooperation agreement. At least two meetings took place with the Government, although Mr. Durante knew full well the most that could happen to benefit him was an acknowledgement of the meetings.

At the initial meeting, there was a general discussion focusing on this case in which it appeared the Government was trying to corroborate certain pieces of evidence that they already knew or believed to be true. Mr. Durante volunteered that he had information in a computer in Belarus and in paper form that we endeavored to have brought to the United States. The computer arrived first and a meeting was held after the Government had an opportunity to look through the contents of the computer. Mr. Durante offered that with the computer and the paper documents he could not only affirmatively confirm certain aspects of this case but could identify on-going fraudulent conduct, largely with penny or low priced stocks by observing the trading patterns and other factors of which he was familiar. He identified certain individuals that he believed were engaged in this criminal activity prior to his incarceration and were still doing the same thing. There were no further meetings although counsel did receive additional documents

9

that Mr. Durante believed could be useful to the Government.

## **CONCLUSION**

For the reasons stated supra, including the disparities of the economic crime Guidelines and the application of 18 U.S.C. §3553, we respectfully request that the Court impose a sentence of no more than 140 months' incarceration.

Respectfully Submitted,

/s/ Lee A. Ginsberg

_____

Lee A. Ginsberg

Dated: June 26, 2017
      New York, New York

10