UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :

UNITED STATES OF AMERICA
                                      :

      - v. -
                                      :      15 Cr. 171 (ALC)

EDWARD DURANTE,
                                      :

          Defendant.
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S SENTENCING MEMORANDUM**


                                          JOON H. KIM
                                          Acting United States Attorney for the
                                          Southern District of New York
                                          One St. Andrew's Plaza
                                          New York, New York 10007


Andrea M. Griswold
Rebecca Mermelstein
Assistant United States Attorneys

      - Of Counsel -

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum in connection with the sentencing of defendant Edward Durante ("Durante"), which is scheduled for July 7, 2017 at 11:00 a.m. For the reasons that follow, the Government respectfully submits, consistent with the recommendation of Probation, that a sentence within the advisory range of 292 to 365 months' imprisonment, calculated pursuant to the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), is appropriate.

Durante is a sophisticated recidivist securities fraud predator and perjurer who – through back-to-back securities fraud schemes – has devastated the lives of more than a hundred investors, many of whom were elderly retirees and widows, defrauding them of a total of more than $50 million. Durante's pattern of criminal conduct leads to one conclusion: Durante will reoffend if given the opportunity. A Guidelines sentence is necessary to ensure that he is not provided that opportunity.

In 2009, while serving a 121 month sentence resulting from his first multi-million dollar market manipulation and investor fraud scheme, Durante began plotting the scheme that brings him before this Court for sentencing. Using multiple aliases, foreign bank accounts, lies to the SEC – and with the help of corrupt investment professionals willing to betray their clients' trust – Durante refined the execution of his fraud, extracting money from his victims' retirement accounts and leaving many of them in financial ruin. When investors lost, Durante gained. Of the more than $15 million of victim funds taken in through the instant offense, Durante diverted more than $9 million to himself and his co-conspirators, personally siphoning off more than $4 million in profits, which he concealed through the use of wire transfers among multiple accounts in the names of other individuals.

The Court has received victim impact statements from Durante's victims, which give voice to the anger, disillusionment, and despair caused by Durante's conduct. The Court is also familiar with certain of Durante's victims from having presided over the recent trial of Abida Khan and Christopher Cervino, two investment professionals Durante recruited to participate in his scheme and fueled the intake of victims' funds. As the Court observed firsthand and can see from the letters, Durante's victims were far from wealthy. Each worked hard for the money they lost in Durante's scheme – money saved for retirement, repairs to a home, to start a family, or for student loans.

Durante now asks this Court to impose a below-Guidelines sentence of 140 months' imprisonment, less than half of the advisory guidelines range and only 19 months more than Durante's first federal sentence, which, like the instant offense, was imposed for securities fraud and lying to federal authorities. In advocating for such a reduced sentence, Durante devotes the vast majority of his submission to a generalized attack on the loss Guidelines, with only a brief discussion of Durante's age (64), family circumstances, and efforts to provide the Government with information. (*See* Def. Sent. Sub. at 8-9). Given the brazen nature of Durante's conduct over an extended period, the fact that he was undeterred by a previous sentence of 121 months' imprisonment, the irreparable harms visited on his victims, and the goals of sentencing, a term of imprisonment within the advisory Guidelines range is warranted.

## BACKGROUND

### A. The Offense Conduct

As accurately set forth in the Presentence Report ("PSR") at paragraphs 22 through 62, Durante conceived and executed a multi-pronged scheme to defraud investors in connection with the purchase and sale of several securities. The scheme principally involved the manipulation

of the stock of a publicly-traded company called VGTel, Inc. ("VGTL"), through which the defendants defrauded more than 100 investors of more than $15 million in two primary ways: (a) by soliciting funds in private shares of VGTL through false and misleading representations and omissions and by failing to invest investors' funds as promised; and (b) by manipulating the publicly-traded market of VGTL stock by controlling a majority of the public shares and engaging in "matched" trades in which the defendant and his co-conspirators controlled both sides of the transaction in order to artificially inflate the stock price and trading volume.   Of the approximately $15 million taken from victims during the fraudulent scheme, more than $9 million was funneled to the defendant and his co-conspirators, including more than $4 million directly into accounts for Durante's personal benefit.   To date, he has not returned a single penny.

### i.   2001 Criminal Case

In December 2001, Edward Durante was convicted in the Southern District of New York of conspiracy to commit securities fraud, wire fraud, money laundering, and making false statements in connection with a market manipulation scheme in which the defendant used the alias "Ed Simmons."   *United States* v. *Edward Durante*, 01 Cr. 1020 (LAP) (the "2001 Criminal Case").   In connection with the 2001 Criminal Case, Durante originally entered a guilty plea pursuant to a cooperation agreement; an agreement he violated by lying to the Government and continuing to engage in criminal fraud.   Because Durante failed to fulfill his obligations under the cooperation agreement, Durante's cooperation agreement was rescinded and his bail was revoked in or about February 2002.   Thereafter, Durante re-pleaded to a (non-cooperation) plea agreement and was sentenced to 121 months' imprisonment.   After completing a residential drug treatment program, Durante was released in 2009, the year he began the instant offense.

In connection with a parallel civil SEC action to the 2001 Criminal Case, a default SEC judgment was also entered against Durante on or about October 10, 2002, in which he was ordered to pay disgorgement and prejudgment interest totaling more than $39 million, the majority of which remains outstanding. Durante was also barred from certain activities in connection with the securities industry, including the sale of securities.

    ii.    *The Charged Scheme*

        a.    *Private Placement Securities Fraud Involving VGTL*

Among other fraudulent and illicit conduct, between 2009 and in or about March 2015, Durante and his co-conspirators fraudulently induced victims to invest in excess of $10 million in private shares of VGTL by concealing from investors that Durante controlled the entities selling the shares;[1] that Durante was prohibited by a regulatory bar from any association with the sale of securities; and that Durante was previously convicted of crimes related to a similar scheme to defraud.

In order to fund his illegal scheme, Durante used a network of corrupt investment professionals, including Khan, an investment advisor in California and Larry Werbel, an investment advisor in Ohio, to induce investors to buy shares of VGTL, and paid Khan and Werbel kickbacks as a result. Durante told investors in private shares of VGTL that: (a) that their investments would be used to fund the operations and growth of VGTL in connection with potential reverse mergers, when in reality no reverse merger was ever consummated and the investments were instead used primarily to personally benefit the defendants; and (b) that the investors would receive an eight-percent dividend on their investments until their private shares could be sold at a promised premium on the public market. In reality, the vast majority of

---

[1] An additional $5 million was induced from investors to purchase public shares of VGTL.

investor monies were not spent to fund the operations and growth of VGTL, no interest payments were ever provided to the investors, and many investors never received VGTL stock certificates or were never able to sell the stock.

### b. Manipulation of the Public Market for Shares of VGTL

Durante facilitated the private placement securities fraud by controlling and manipulating the public stock of VGTL, specifically by artificially inflating the stock price and trading volume of VGTL, which allowed Durante to profit from his own sales of VGTL stock and to further induce investments in private shares of VGTL. To that end, through entities he controlled, Durante held a majority of the publicly-traded stock of VGTL. Durante recruited Cervino, a broker, to open brokerage accounts associated with Durante-controlled entities and investors, including clients of Khan's. Khan and/or Durante signed the paperwork opening these accounts at the brokerage firm where Cervino worked, sometimes without the client's approval. Khan, along with Durante, then purchased VGTL stock for her clients through Cervino — sometimes without the clients' knowledge or permission — while Durante and Cervino ensured that many of these purchases were matched with sales of VGTL stock by Durante-controlled accounts.

The result of these transactions was that the defendant was effectively taking both sides of a single transaction in VGTL stock in order to artificially control VGTL's stock price. In total, the efforts of Durante and his co-conspirators to artificially inflate the market for VGTL caused the stock price to increase from approximately $.25 per share in April 2012 to as much as $1.90, and dramatically inflated the trading volume, which further increased the defendants' ability to raise private investments in VGTL.

### c. Fraud in Stocks Other Than VGTL

As laid out in the Indictment, VGTL was not the only penny stock vehicle used by Durante. Durante also defrauded victims in connection with purported investments in other

penny stock companies, including Q Lotus Holdings, Inc. ("QLTS"), Haddad-Wylie Industries LLC ("HWIC"), and Cassidy Ventures, Inc. ("CSVN").   While the dollars invested in each of these companies was a small fraction of the monies invested in VGTL, Durante used similar false and misleading representations and omissions and failed to invest investors' funds as promised.   Of particular note, after the VGTL manipulation scheme collapsed and Durante was no longer able to use the VGTL vehicle as a mechanism to steal victim funds, Durante – with the help of Khan and others – recruited investors to invest in shares of CSVN.

       iii.    *The Charged Perjury*

As noted above, in addition to the 2001 criminal conviction, the SEC also secured a default judgement against Durante in connection with a parallel civil SEC case.   In connection with the parallel SEC matter, Durante was ordered to pay disgorgement and prejudgment interest totaling more than $39 million.   In an effort to recover funds from Durante following his release from prison, the SEC litigated with Durante concerning his ability to pay monies toward the disgorgement judgement.   In connection with that litigation, Durante was deposed by the SEC in October 2012.   Specifically, in sworn testimony before the SEC, Durante gave the following false underlined testimony:

> Question:   Do you go by any other names besides Edward Durante?
>
> Answer:   <u>No</u>
>
> \*\*\*
>
> Question:   What other names have you used?
>
> Answer:   <u>Edward Simmons</u>.
>
> Question:   Do you use any aliases now?
>
> Answer:   <u>No</u>.

At the time, Durante was perpetrating the instant offense and actively using multiple aliases, including, most frequently, Ted Wise. As set forth above, the vast majority of those monies remain unpaid.

### B. The Charges, the Guilty Plea, and the Guidelines Calculation

Durante was arrested in Germany in March 2015 and extradited to this District on December 18, 2015. On August 23, 2016, Durante pled guilty before Magistrate Judge Andrew J. Peck to one count each of conspiracy (Count One), securities fraud (Count Two), money laundering (Count Six), and perjury (Count Nine).

Durante entered his plea pursuant to a plea agreement in which the parties agreed that the defendant's adjusted offense level is 38, calculated as follows: a base offense level of seven increased by 20 levels because the actual loss attributable to the defendant's conduct was more than $9,500,000 but was not more than $25,000,000; a four-level increase because the offense involved substantial hardship to five or more victims; a two-level increase because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means; a two-level increase because the defendant willfully obstructed and attempted to obstruct the administration of justice with respect to the investigation of the instant offense by impeding the SEC's efforts to take testimony of one or more witnesses and the obstructive conduct related to the defendant's offense of conviction and any relevant or closely related conduct; a four-level increase because the defendant was an organizer or leader of the scheme, which involved five or more participants and was otherwise extensive; a two-level increase because the defendant was convicted of money laundering under 18 U.S.C., Section 1956; and finally, a three level adjustment for acceptance of responsibility and foregoing a trial.

The prior paragraph summarizes the guidelines calculation applicable to Group One, which included Counts One, Two and Six (Conspiracy, Securities Fraud and Money Laundering). As set forth in the plea agreement, the adjusted offense level for Group Two (Count 9 – Perjury) is 17. While Group 2 did not increase the applicable offense level, the sentencing guidelines advise that "it may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level."[2] Based on an offense level of 38 and a Criminal History Category of III – which includes two points because the defendant was on supervised release from another fraud scheme at the time he committed the instant offense – the parties agreed that the applicable Guidelines range was 292 to 365 months' imprisonment. The Probation Office agrees with the parties' calculation of the offense level and Guidelines, and recommends a sentence of 292 months' imprisonment.

## DISCUSSION

### A. Calculation of the Guidelines Range Provides a Useful Frame of Reference

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005). Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *United States* v. *Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). A sentencing court must begin by calculating the applicable Guidelines range. *See United States* v. *Corsey,* 723 F.3d 366, 375 (2d Cir. 2013). The applicable Sentencing Guidelines range "will be a benchmark

---

[2] The basis for the obstruction adjustment for Group 1 is distinct from the basis for the perjury charge underlying Count 9 (Group 2). Durante obstructed the SEC's efforts to depose Ken Wise, his accountant, by, among other ways, instructing Wise to obtain doctors' notes as excuses to avoid testimony. Separately, Durante perjured himself when he testified before the SEC.

9

or a point of reference or departure" when considering a particular sentence to impose. *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005). In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 259-60 (citations omitted).

The Guidelines calculation, to which the parties have agreed, is determined largely by six factors: the loss amount, the number of victims and the degree of hardship sustained by victims, the defendant's use of sophisticated means, the defendant's role as the organizer and leader of the scheme, the defendant's obstructive and perjurious conduct, and the defendant's recidivism, which is reflected in the enhancement for committing the instant offense while on supervised release.

Economic loss serves as a suitable starting place for assessing culpability because it serves as a useful – though certainly not dispositive – proxy for viewing the magnitude of the crime. The defendant spends much of his submission focused on what he terms an "over emphasis on loss amounts." (Def Sub. at 2). The defendant's arguments, however, miss the mark. The criticisms sometimes leveled at the loss Guidelines in the context of other types of fraud cases – namely that they purportedly overstate the true loss by including theoretical losses, or losses beyond the defendant's control – do not apply in this case.[3] The loss figure upon which the

---

[3] *See Adelson,* 441 F. Supp. 2d at 509 ("[T]he precipitous decline in stock price that typically accompanies a revelation of fraud generates a multiplier effect that may lead to guideline offense levels that are, quite literally, off the chart. The problem is further exacerbated by the fact that the ordinary measure of loss in a criminal securities fraud case is the decline in the price of stock when the fraud is revealed."); *United States* v. *Gupta,* 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2013) (in an insider trading case, criticizing the Government's position in adding 18 points for "the resultant but unpredictable monetary gains made by others, from which Mr. Gupta did not in any direct sense receive one penny."). The Government does not address the merits, or lack thereof, of such arguments. It notes only that in this case, such arguments simply do not apply.

10

parties have agreed – approximately $15 million – includes only actual losses that were known to, and intended by, the defendant. Here, Durante personally extracted – or knowingly caused his co-conspirators to extract – every penny of the $15 million through his scheme and then directly wired substantial sums of that amount directly into accounts he controlled, to his wife and to bank accounts located abroad. Put differently, there can be no question that Durante intended to permanently deprive his victims of these funds.

In arguing that the loss guidelines lead to an unfairly high guidelines calculation, Durante points to recommendations from a 2014 American Bar Association analysis, which suggested that the guidelines should better reflect a defendant's relative culpability and the impact to victims of the offense (Def. Sent. Sub. at 4-7). Increased emphasis on these factors, however, does not assist the defendant. To the contrary, it is difficult to imagine a situation where an individual defendant has more relative culpability in a fraud scheme. The enhancements for Durante's role as the leader and organizer and for the use of sophisticated means are textbook examples of the proper application of these factors. He masterminded the scheme while in prison using his 2001 criminal case as a blueprint for the instant offense. He then carried out the instant offense using additional aliases, shell companies and foreign bank accounts. Durante's co-defendants in this case, while critical participants in the scheme, are generally all first time offenders none of whom had full visibility into the mechanics of the scheme plotted by the defendant. Durante also reaped the vast majority of profits from the illegal conduct.

The impact to victims is also not a mitigating factor. Indeed, it is very much an aggravating one. Durante personally met with many of the victims and knew, for example, that some victims were investing their entire retirement funds or life savings, at times joking with his

co-conspirators about the length of time it was taking to liquidate investors' safe annuity investments so that Durante could use that money to buy VGTL and fuel his scheme.

Finally, the enhancements for obstruction and for committing the present offense while on supervised release appropriately reflect the defendant's complete lack of respect for the law, including his failure to abide by court orders requiring him to make payments to the SEC and to abide by the terms of his supervised release.

### B. The 3553(a) Factors Favor a Guidelines Sentence

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

Section 3553(a) further directs the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a).

The defendant urges the Court to focus on the 3553(a) factors as a way to "strik[e] a balance between" the advisory Guidelines range of 292 to 365 months and the 3553(a) factors. (Def. Sent. Sub. at 8). None of the 3553(a) factors, however, favor leniency in this case. Indeed, Durante concedes, as he must, that "his prior conviction for fraud, his failure to follow through on an opportunity to cooperate, [his] engaging in illegal conduct and the fact that there is a perjury charge in this case . . . weigh[] against Mr. Durante." (*Id.*) Instead, Durante focuses on the fact that he is 64 years old and asserts that if a Guidelines sentence is imposed "he is more likely to die in jail than ever be released." (*Id.*). At 64, Durante is younger than many of his retiree victims, such as 83 year old Alice Winchester who testified in the Khan/Cervino trial. Indeed, when interviewed by Probation, Durante described his physical health as "great." (PSR ¶121). Finally, with respect to Durante's age, his crimes are not the sort – as are for example certain violent crimes – that render old age any bulwark against recidivism. Durante was not a young man when he committed the instant offense. If released from prison – at any age – Durante will be just as capable of destroying lives with his financial crimes as he was in connection with the instant offense. Durante's age thus does not counsel in favor or a more lenient sentence.

Durante also makes cursory reference to the fact that he has two adult children and had a relationship with his paramour's daughter during the period of the instant offense. Whatever relationship Durante has with his children did not prevent the defendant from reoffending after each of his prior offenses, including following his 2009 release from federal custody. Also relevant is the fact that – despite numerous attempts by Probation – the defendant has not filled out the required financial affidavit so that probation can assess his assets and determine if he can pay a fine. (PSR ¶148). Through counsel, Durante explained that "the financial affidavit has

not been filled out because a lot of Durante's financial information was overseas and is awaited." Given that the defendant wired significant sums of his fraudulent proceeds to accounts in his wife's name and/or out of the United States, the fact that Durante continues to seek to obscure the existence and extent of those assets is telling.

The impact to the victims in this case also counsels in favor of a significant sentence. The impact of Durante's nearly six-year fraud was made apparent in the testimony of the victims who testified at the Khan/Cervino trial: Alice Winchester, Kristy Crouch, Julie Linsacum and Laura Lobue. The impact of this scheme was not just financial. The trauma of being defrauded and betrayed wreaked an emotional, physical and mental toll that in some cases exceeded the financial one, as is reflected in many of the victim impact letters submitted to the Court. To choose just one example, Victim-1 describes the impact of Durante's fraud on his life, in substance and in part, in a letter to the Court:



14



(Victim Impact Statement of Victim-1.)

The seriousness of Durante's offense is manifest in Victim-1's letter. Durante lived off his victims' money for years, paying for a lifestyle – including a luxury car, a Manhattan apartment, travel, and an indulgent lifestyle for his paramour – that he would not otherwise have been able to afford and, because of Durante' fraud, neither can his victims. Durante's sustained and methodical criminal conduct points to the need for a sentence within the Guidelines range. Such a sentence will also provide just punishment for Durante's manipulative and purposeful actions, promote respect for the law and ensure that Durante is prevented from victimizing others.

**CONCLUSION**

For the foregoing reasons, the Government respectfully submits that Durante has committed a serious offense, the appropriate punishment for which is adequately reflected in the applicable Guidelines range. Accordingly, the Government requests that the Court impose a sentence within the applicable Guidelines range of 292 to 365 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By:   /s/ Andrea M. Griswold
Andrea M. Griswold
Rebecca Mermelstein
Assistant United States Attorneys
(212) 637-1205

Dated: July 5, 2017
New York, New York